SECURITIES AND EXCHANGE COM-
MISSION, Plaintiff,

v.

MICRO–MOISTURE CONTROLS, INC.,
Louis Levin, John Herschorn, Gershon Kaplan, Garland L. Culpepper, Jr., Albert J. Grayson, George Phillip Barton, Rudolph V. Klein, doing business as R. V. Klein Company, Jack Gold, Robert C. Leonhardt, Rockwell Securities Corporation, A. J. Grayson & Co., Incorporated, Brown, Barton & Engel, I. W. Page & Co., Incorporated, World Wide Investors Corporation and McGrath Securities Corporation, Defendants.

United States District Court
S. D. New York.
March 31, 1958.

Edward O. B. Reid, New York City, Robert F. Muir, Security Investigator, New York City, for plaintiff.

Colton & Pinkam, New York City, by Spencer Pinkam, New York City, for Robert C. Leonhardt & McGrath Securities Corp.

Lichtig, Colton & Greenfield, New York City, by Max M. Greenfield, New York City, for Albert J. Grayson and A. J. Grayson, Inc.

John H. Kelley, New York City, by Lee Feltman, New York City, for Garland L. Culpepper and Rockwell Securities Corp.

Gordon, Brady, Caffrey & Keller, New York City, by Stephen Bermas, New York City, for George P. Barton & Brown, Barton & Engel.

Levy & Nevins, New York City, by Saul Nevins, New York City, for Louis Levin & Micro-Moisture.

John T. Sullivan, New York City, for Jack Gold and I. W. Page & Co. Inc.

John J. McKenna, New York City, for World Wide Investors Corp.

EDELSTEIN, District Judge.

### Findings of Fact

1. Defendant Micro-Moisture Controls, Inc. was organized on or about January 16, 1953, in the State of Delaware, has an authorized capitalization of 7,000,000 shares of a one cent common stock of which approximately 5,512,983 shares were issued and outstanding during the period involved.

2. (a) Defendant I. W. Page & Co., Inc. has been registered with the plaintiff as a broker and dealer in securities since September 6, 1956. Majority stock control of this defendant corporation is owned by the defendant Jack Gold, who is the president, treasurer, and a director, and it maintains its principal place of business at 37 Wall Street, New York City, New York.

(b) Defendant Brown, Barton & Engel has been registered with the plaintiff as a broker and dealer in securities since March 18, 1956. The capital stock of this defendant corporation is owned or controlled by defendant George Phillip Barton, who is the president and a director, and it maintains its principal place of business at 24 Commerce Street, Newark, N. J.

(c) Defendant McGrath Securities Corporation has been registered with the plaintiff as a broker and dealer in securities since March 12, 1953. The capital stock of this defendant corporation is owned by defendant Robert C. Leonhardt, who is the president and a director, and it maintains its principal place of business at 70 Wall Street, New York City, N. Y.

(d) Defendant A. J. Grayson &. Co., Inc. has been registered with the plaintiff as a broker and dealer in securities since February 25, 1956. The capital stock of this defendant corporation is owned by the defendant Albert J. Grayson, who is the president and a director, and it maintains its principal place of business at 92 Liberty Street, New York City, N. Y.

(e) Defendant Rockwell Securities Corporation has been registered with the plaintiff as a broker and dealer in securities since July 20, 1956. The capital stock of this defendant corporation is owned by the defendant Garland L. Culpepper, Jr., who is the president and a director, and it maintains its principal place of business at 70 Wall Street, New York City, N. Y.

(f) Rudolph V. Klein, defendant, doing business as R. V. Klein Company, has been registered with the plaintiff as a broker and dealer in securities since September 14, 1942, and maintains his principal place of business at 170 Broadway, New York City, N. Y.

(g) Defendant World Wide Investors Corporation has been registered with the plaintiff as a broker and dealer in securities since July 9, 1955, and during the period material to the issues maintained its principal place of business at 231 Washington Street, Hoboken, N. J.

3. On December 20, 1955, defendant Micro-Moisture Controls, Inc. issued and delivered to the Peeby Company, Inc. 1,200,000 shares of its common stock in consideration of all of the assets of the latter. Peeby Company, Inc. thereupon delivered the 1,200,000 shares to its own stockholders, who were twenty in number. None of the 1,200,000 shares was registered with the plaintiff. In issuing these shares to Peeby Company, Inc., defendant Micro-Moisture Controls, Inc. claimed to rely upon the provisions of Rule 230.133 of the General Rules and Regulations of the plaintiff under the Securities Act of 1933. Immediately after the transaction defendant Micro-Moisture Controls, Inc. had outstanding 2,947,355 shares of its common stock. (Exhibit 4 of plaintiff.)

4. At about the same time as the Peeby Company, Inc. transaction, the defendants Robert C. Leonhardt, Louis Levin and Albert J. Grayson each borrowed $100,000 from a New York Bank. Pursuant to the authority granted by certain powers of attorney delivered to him by the former Peeby stockholders, defendant Louis Levin pledged 600,000 of the 1,200,000 shares received by the Peeby Company, Inc. stockholders as collateral security for the loans. (Exhibit 4 of plaintiff.)

5. The defendant Louis Levin, pursuant to the powers of attorney, sold the 1,200,000 shares through broker-dealers in New York, including the defendant McGrath Securities Corporation. (Exhibit 4 of plaintiff.)

6. In April 1956 defendant Garland C. Culpepper, Jr., resigned as the president and a director of defendant Micro-Moisture Controls, Inc. and defendant Louis Levin became the president and a director. (Exhibit 4 of plaintiff.)

7. On June 21, 1956 the defendant Micro-Moisture Controls, Inc. had outstanding 3,071,498 shares of its common stock. (Exhibit 4 of plaintiff.)

8. Defendant Micro-Moisture Controls, Inc., under the direction of defendant Louis Levin, on or about June 21, 1956, caused to be issued to nominees of Converters Acceptance Corporation Limited, a Canadian corporation, 2,396,485 shares of the common stock of the corporation in exchange for the assets of Converters Acceptance Corporation.

9. Converters Acceptance Corporation distributed the 2,396,485 shares of common stock to its 31 stockholders.

10. Defendant John Herschorn of 5 Bridge Street, Montreal, Province of Quebec, Canada, acquired of record in his own name 424,697 shares of the common stock and the defendant Gershon Kaplan of the same address became owner of record of 353,080 shares. Moreover, defendant Kaplan and at least 25 other owners of an additional 1,477,840 shares of the total of 2,396,485 shares of common stock granted defendant John Herschorn irrevocable powers of attorney to possess and sell at his sole discretion these shares. Further, defendant Herschorn, in the manner hereinafter particularly described, disposed of 710,623 shares of that common stock.

11. No registration statement for the 2,396,485 shares was in effect or filed with the plaintiff. Defendant Micro-Moisture Controls, Inc. and other defendants claimed to rely on Rule 230.133 in connection with the issuance of these 2,396,485 shares by defendant Micro-Moisture Controls, Inc. to Converters Acceptance Corporation. Immediately after the transaction, defendant Micro-Moisture Controls, Inc. had 5,467,983 shares of its common stock outstanding. (Exhibit 4 of plaintiff.)

12. On July 27, 1956 defendant Micro-Moisture Controls, Inc. issued and delivered in a private transaction to defendant Louis Levin a total of 44,000 shares of its common stock as payment for moneys due and owing to him. Immediately after this transaction defendant Micro-Moisture Controls, Inc. had 5,512,983 shares of its common stock outstanding. (Exhibit 4 of plaintiff.)

13. Defendant Micro-Moisture Controls, Inc. made the following additional

issuances of its common stock which were not registered under the Securities Acts:

(a) 450,000 shares to the organizers of the corporation early in 1953;

(b) 299,000 shares to the public pursuant to Regulation A in 1953;

(c) 33,000 shares to stockholders of All Weather Windows Corporation in February of 1954;

(d) 318,007 shares to Eastern Koolvent Aluminum Awning, Inc., on May 27, 1954;

(e) 10,000 shares to Jack Carmel in August 1954;

(f) 107,143 shares to its subsidiary company, Comfort Zone Corporation, and an additional 88,500 shares to the eight stockholders of that company in October 1954;

(g) 430,000 shares to the 14 stockholders of Koolvent Awning, Limited, on November 30, 1954;

(h) 11,705 shares in February 1956 to the public holders of convertible bonds which were qualified under Regulation A;

(i) 44,360 shares to 6 persons in February and March, 1956;

(j) 32,972 shares on March 12, 1956 and an additional 46,811 shares on September 10, 1956 as stock dividends.

14. The relative positions, as Micro-Moisture Controls, Inc. stockholders, of each of the following persons, after the distribution of the 2,396,485 shares of common stock on or about July 5, 1956 was as listed [except for the possibility that members of the general public, whose names are not known to either the defendant, Micro-Moisture Controls, Inc., or plaintiff, because their shares may have been held in street names of broker nominees, may be the owners of more than 14,000 shares of said common stock]:

| 1. | Defendant John Herschorn | | 424,697 |
| 2. | Defendant Gershon Kaplan | | 353,080 |
| 3. | R. Boyer | | 282,555 |
| 4. | H. Salinsky | | 254,345 |
| 5. | I. Glouberman | 98,735 | 197,470 |
| | M. Glouberman | 98,735 | |
| 7. | H. Benjamin | | 120,120 |
| 8. | C. D. Hyman | 77,350 | 81,900 |
| | F. R. Hyman | 4,550 | |
| 10. | A. Schactman | | 60,652 |
| 11. | P. L. Hyland | | 60,652 |
| 12. | P. R. Goodkin | | 54,964 |
| 13. | E. R. Mellenger | | 34,489 |
| 14. | J. Selinger | | 34,398 |
| 15. | H. Levine | | 34,398 |
| 16. | W. Saks | | 28,210 |
| 71. | D. Metrick | | 28,210 |
| 18. | Claude Ducharme | | 28,210 |
| 19. | B. Pigeon | | 21,294 |
| 20. | R. Kempton | | 21,294 |
| 21. | W. Cohen | | 21,294 |
| 22. | D. Cohen | | 21,294 |
| 23. | I. Pichl | | 21,294 |
| 24. | Kurt Koenig | | 21,294 |
| 25. | B. Soloway | | 21,294 |
| 26. | H. Yates | | 14,105 |
| 27. | George Hoffman | | 14,105 |

Paul Saks of Montreal, Canada, who received 120,120 shares of the common stock as a liquidating dividend from Converters Acceptance Corporation was the sixth largest stockholder of record; the defendant Garland L. Culpepper Jr. was the eighth; and the defendant Louis Levin was thirteenth on the list of stockholders. Besides these stockholders there were and still are no other substantial stockholders of record of the defendant Micro-Moisture Controls, Inc., because the average holding of the more than 4,000 remaining stockholders is less than 1,000 shares of common stock. (Exhibits 1A, 1B and 2 of plaintiff.)

15. The transfer company, pursuant to the instructions of Micro-Moisture Controls, Inc. on July 3, 1956 issued and delivered by mail stock certificate of that defendant J30118 for 1,178,814 shares of common stock in the name of the defendant John Herschorn, 5 Bridge Street, Montreal 29, Province of Quebec, Canada, and certificate J30119 for 1,217,671 shares of common stock in name of P. L. Hyland, 595 Westluke Street, Montreal 29, Province of Quebec, Canada, as nominees for the Converters Acceptance Corporation of the city of Montreal. (Exhibit 1A, 1C and 2 of plaintiff.)

16. Stock certificates J30118 and J30119 were shortly thereafter surrendered to the transfer company and cancelled. Simultaneously, the total of 2,396,485 shares of common stock were reissued as a liquidating dividend to defendants John Herschorn and Gershon Kaplan and 29 other stockholders of Converters Acceptance Corporation. The stock certificates issued were as follows:

| Owner of Record | Certificate Nos. | Total Shares |
|---|---|---|
| John Herschorn, Defendant | J30120/J30141 Incl. | 424,697 |
| Gershon Kaplan, Defendant | J30161/J30178 " | 353,080 |
| Ralph Boyer | J30321/J30244 " | 282,555 |
| H. Salinsky | J30200/J30224/J30286 Incl. | 254,345 |
| Paul Saks | J30155/J30160 | 120,120 |
| H. B. Benjamin | J30225/J30230 " | 120,120 |
| I. Glouberman | J30245/J30254 " | 98,735 |
| M. Glouberman | J30255/J30264 " | 98,735 |
| C. D. Hyman | J30151/J30153 " J30285 | 77,350 |
| P. L. Hyland | J30180/J30182 " | 60,651 |
| A. Schactman | J30183/J30185 " | 60,652 |
| P. Goodkin | J30189/J30191 " | 54,964 |
| E. R. Mellenger | J30145/J30146 " | 34,489 |
| H. Levine | J30269/J30270 " | 34,398 |
| J. Selinger | J30147/J30148 " | 34,398 |
| D. Metrick | J30194/J30196 " | 28,210 |
| W. Saks | J30197/J30199 " | 28,210 |
| Claude Ducharme | J30265/J30267 " | 28,210 |
| B. Pigeon | J30154 | 21,294 |
| R. Kempton | J30179 | 21,294 |
| I. Pichl | J30188 | 21,294 |
| N. Cohen | J30192 | 21,294 |
| B. Soloway | J30142 | 21,294 |
| D. Cohen | J30143 | 21,294 |
| Kurt Koenig | J30144 | 21,294 |
| Hyman Yates | J30149 | 14,105 |
| George Hoffman | J30150 | 14,105 |
| Jack Rudner | J30193 | 11,648 |
| F. R. Hyman | J30268 | 4,550 |
| Celia Cohen | J30186 | 4,550 |
| Catherine Allin | J30187 | 4,550 |

Total 2,396,485

(Exhibits 1A, 1C and 2 of plaintiff.)

17. The issuance and transfers of its common stock were effected by action of certain employees and officers in behalf of Micro-Moisture Controls, Inc., and that such employees and officers acted within the scope of their employment and authority, an authority approved by the Board of Directors of the corporation. Defendant Louis Levin became president of the defendant Micro-Moisture Controls, Inc. sometime during the month of April 1956. (Exhibits 1A and 2 of plaintiff.)

18. Defendants Louis Levin, John Herschorn and Gershon Kaplan, together with 25 other persons, who granted defendant John Herschorn irrevocable powers of attorney to sell their shares of stock, each waived payment of the installment of the dividend payable at a rate of two cents per share in cash, together with a stock dividend of three per cent in common stock, paid on September 10, 1956 to stockholders of record August 15, 1956. (Exhibits 1A, 1D and 2 of plaintiff.)

19. Defendant Micro-Moisture Controls, Inc. was regularly furnished information by the Registrar and Transfer Company, its securities transfer agent, which maintains places of business at 50 Church Street, City and State of New York, and 15 Exchange Place, Jersey City, State of New Jersey. (Exhibits 1A, 1E and 2 of plaintiff.)

20. In a circular letter to stockholders of Micro-Moisture Controls, Inc., dated January 10, 1957, signed by the defendant Louis Levin as president of defendant corporation, it was announced that:

(a) The annual stockholders meeting which was set for February 28, 1957, was to be held at the corporation's office of Plotnick Brothers, Ltd., 5 Bridge Street, Montreal. The Board of Directors scheduled the meeting at Montreal to afford an opportunity to inspect the Canadian operations of the defendant corporation, and because the major operations and defendant's assets are located in Canada.

(b) The defendant corporation had recently moved its local place of business to 132 Front Street, Farmingdale, New York. (Exhibits 1A, 1E and 2 of plaintiff.)

21. Since the issuance of the ·2,396,-485 shares of common stock in July 1956 for the assets of Converters Acceptance Corporation, the executive management and principal business of Micro-Moisture Controls, Inc. has been located in the environs of the city of Montreal, Province of Quebec, Dominion of Canada. (Exhibits 1A and 2 of plaintiff.)

22. Some of the 26 stockholders of Converters Acceptance Corporation who granted the defendant John Herschorn powers of attorney, were associated as stockholders for a number of years prior to June 21, 1956, in the four private manufacturing corporations which were absorbed by Micro-Moisture Controls, Inc. through the acquisitions of the assets of Converters Acceptance Corporation. (Exhibits 1A and 2 of plaintiff.)

23. The following stock transfers were effected on the dates indicated:

| Record Owner | Certificate Numbers | Number of Shares | Date of transfer | New Ctf. Nos. | New Record Owner |
|---|---|---|---|---|---|
| P. L. Hyland | J30180 | 20,000 | 11/ 2/56 | J36109/28 | Crawford & Co. |
| H. Salinsky | J30200/04 | 50,000 | 12/10/56 | J46359/412 | " " |
| H. B. Benjamin | J30225/27 J30230 | 80,120 | 12/14/56 | J46828/61 | " " |
| I. Glouberman | J30245/47 J30248/49 | 30,000 | 12/17/56 | J45775/804 | J. Herschorn |
| | J30254 | 20,735 | 12/17/56 | J45805/32 | I. Glouberman |
| J. Herschorn | J45778/804 | 17,000 | 12/20/56 | J47414/16 | King & Co. |

(Exhibits 1A and 2 of plaintiff.)

24. It is a fact that 998,210 of the 2,396,485 shares of common stock were placed under the voting control of defendant Louis Levin, president of defendant Micro-Moisture Controls, Inc., pursuant to the terms of two voting trust agreements dated June 21, 1956, as follows:

| Name | Shares Owned | In Voting Trust |
|---|---|---|
| Herschorn (defendant) | 424,697 | 200,000 |
| Kaplan (defendant) | 353,080 | 250,000 |
| Salinsky | 254,345 | 200,000 |
| Benjamin | 120,120 | 40,000 |
| Boyer | 282,555 | 200,000 |
| Saks, W. | 28,210 | 28,210 |
| Glouberman, I. | 98,735 | 40,000 |
| Glouberman, M. | 98,735 | 40,000 |
| Cohen & Metrick | 49,504 | |
| Pichl | 21,294 | |
| Schactman | 60,652 | |
| Goodkin | 54,964 | |
| Hyland | 60,651 | |
| Hyman, F. | 4,550 | |
| Kempton Mellinger Hyman, C. | 133,133 | |
| Cohen, D. | 21,294 | |
| Pigeon | 21,294 | |
| Selinger | 34,398 | |
| Yates | 14,105 | |
| Hoffman | 14,105 | |
| Levin | 34,398 | |
| Koenig | 21,294 | |
| Others | 190,372 | |
| | 2,396,485 | 998,210 |

(Exhibit 4 of plaintiff; Exhibit A of defendants McGrath Securities Corporation and Robert C. Leonhardt.)

25. On July 9, 1956 the defendant Albert J. Grayson borrowed $100,000 from a New York bank and defendant Robert C. Leonhardt borrowed $50,000 from the same bank. Pursuant to the powers of attorney referred to, the defendant John Herschorn delivered as collateral security for these loans, 300,000 shares out of the 2,396,485 shares of common stock of defendant Micro-Moisture Controls, Inc. received by the 31 stockholders of Converters Acceptance Corporation. (Exhibit 4 of plaintiff.)

26. In addition to these loans [Finding of Fact 25] the defendant Louis Levin borrowed at the same time from the same bank an additional $60,000 and pledged as collateral 120,000 shares of the stock of the defendant Micro-Moisture Controls, Inc. received by the 31 stockholders of Converters Acceptance Corporation.

27. The defendant John Herschorn received payment, at prices from 75 cents to $1.00 per share, from the registered broker-dealer defendants, for a total of at least 710,623 shares of the 2,396,485 shares of common stock of de-

fendant Micro-Moisture Controls, Inc. which were received by the 31 stockholders of Converters Acceptance Corporation, as indicated:

| Purchasing Defendant | No. of Shares | Date of Last Purchase |
|---|---|---|
| McGrath Securities | 447,614 | 10/30/56 |
| I. W. Page & Co. Inc. | 150,014 | 12/12/56 |
| Brown, Barton & Engel | 66,945 | 12/ 5/56 |
| World Wide Investors | 23,550 | 12/10/56 |
| R. V. Klein | 17,500 | 12/18/56 |
| Rockwell Securities | 5,000 | 9/18/56 |

710,623 shares (Exhibit 4 plaintiff)

---

28. Of the 447,614 shares purchased by the McGrath Securities Corporation and Robert C. Leonhardt from defendant John Herschorn, they sold 140,114 at retail to various of their customers; sold 207,000 of the 2,396,485 unregistered shares to defendants Albert J. Grayson and A. J. Grayson & Co. Inc.; sold 35,500 shares to defendant Rudolph V. Klein; sold 8,500 shares to defendant World Wide Investors Corporation and repaid 45,000 shares to defendant Garland L. Culpepper, Jr. in payment for a similar number of shares previously borrowed by defendant Robert C. Leonhardt from defendant Culpepper. The last retail sales of these shares by defendant McGrath Securities Corporation was on October 31, 1956; last sale to defendants Albert J. Grayson and A. J. Grayson & Co., Inc. was on October 10, 1956; last sale to defendant Rudolph V. Klein was on October 31, 1956; last sale to defendant World Wide Investors Corporation was on October 24, 1956; and the delivery of the 45,000 shares to defendant Garland L. Culpepper was on September 18, 1956. The mails were used in connection with all these transactions. (Exhibit 4 of plaintiff.)

29. Of the total of 32,050 shares purchased by the defendant World Wide Investors, 19,550 shares were sold to the defendants Albert J. Grayson and A. J. Grayson & Co., Inc., another 1,000 shares were purchased by a securities dealer not involved herein and the balance of 11,500 shares were sold directly to the public by defendant World Wide Investors Corporation. (Exhibit 4 of plaintiff.)

30. The 710,623 shares of common stock of defendant Micro-Moisture Controls, Inc. received by 31 stockholders of Converters Acceptance Corporation, for which defendant John Herschorn received payment from the registered broker-dealer defendants, were sold through use of the mails to numerous public investors residing in the United States, at prices ranging between $1.00 and $1.25 per share, by agents and employees of the defendant registered broker-dealers, as a result of the number of initial purchasers detailed in the "Summary of Transactions effected by Registered defendants in Common Stock of Defendant Micro-Moisture Controls, Inc. which Constitute the Basis of the Above Civil Action" annexed to and part of Exhibit 4 of plaintiff.

31. Between December 10 and December 14, 1956, defendant McGrath Securities Corporation, upon instructions from defendant John Herschorn, caused defendant Micro-Moisture Controls, Inc. to transfer 162,675 shares of its common stock from the names of certain stockholders of Converters Acceptance Corporation into the name of Crawford & Co., and these 162,675 shares were thereupon returned to defendant John Herschorn. Crawford & Co. is the registered

nominee for defendant McGrath Securities Corporation. Thereafter defendant McGrath Securities Corporation purchased, in a routine transaction from a securities broker-dealer not named as defendant, and sold at retail 1,000 shares of the total of 162,675 shares. Thereafter in a similar manner defendant McGrath Securities Corporation purchased and retailed in routine transactions an additional 6,000 shares of these 162,675 shares. (Exhibit 4 of plaintiff.)

32. John J. McKenna, an attorney at law for more than 10 years, was vice-president of defendant McGrath Securities Corporation from August 12, 1955, until October 1, 1956, and during such period also acted as "house counsel".

33. A meeting occurred in the office of McGrath Securities Corporation and Robert C. Leonhardt in January 1956 between John J. McKenna and defendant John Herschorn, and at that time McKenna knew the defendant Herschorn to be an attorney at law engaged in practice in the city of Montreal, Province of Quebec, Canada. After the meeting McKenna did business with defendant Herschorn in his capacity as an officer of McGrath Securities Corporation.

34. John J. McKenna, in his capacity as an officer of defendant McGrath Securities Corporation, also met the defendant Louis Levin in January 1956 and at that time McKenna knew him to be an attorney at law engaged in practice in the city of Montreal.

35. John J. McKenna, in his capacity as an officer of defendant McGrath Securities Corporation, met with the defendant Louis Levin several times a month after the initial meeting, and as the months went on McKenna saw the defendant Louis Levin more and more frequently, especially in the summer of 1956.

36. As a result of the meetings with defendant Louis Levin, John McKenna, in his capacity as an officer of defendant McGrath Securities Corporation, became familiar with the business operations of the defendant Micro-Moisture Controls, Inc. and kept currently abreast with developments in the corporation. In particular McKenna learned that defendant Louis Levin divided his time "about equally between Canada and Long Island and New York City", and that the defendant corporation had moved its place of business in the United States from Mineola to Farmingdale, New York.

37. Defendant Albert J. Grayson owns and controls A. J. Grayson & Co. of New Jersey, Inc., which has been registered with the plaintiff as a broker-dealer in securities since April 27, 1956; and A. J. Grayson & Co. of Maryland, Inc., which has been registered with the plaintiff as a broker-dealer in securities since May 26, 1956. (Exhibit 5 and 6 of plaintiff.)

38. As an accommodation loan, arranged by defendants Louis Levin and Robert C. Leonhardt, defendant Albert J. Grayson gave his note for $100,000 to a bank located in New York State on or about December 21, 1955; defendant Levin deposited 195,000 shares of common stock of defendant Micro-Moisture Controls, Inc., as collateral security; and that the proceeds of the loan were turned over to defendant Levin. (Exhibits 5 and 6 of plaintiff.)

39. As an accommodation loan, arranged by defendant Louis Levin and Robert C. Leonhardt, defendant Albert J. Grayson gave his note for $100,000 to the same bank on or about July 9, 1956; there were deposited 200,000 shares of common stock of defendant Micro-Moisture Controls, Inc., registered in the name of John Herschorn, as collateral security; and that the proceeds of the loan were turned over to defendant Louis Levin. (Exhibits 5 and 6 of plaintiff.)

40. For some time prior to July 1, 1956, defendants Albert J. Grayson and A. J. Grayson & Co., Inc. effected numerous and substantial purchases of securities, including the stock of the defendant Micro-Moisture Controls, Inc., from the defendants McGrath Securities Corporation and Robert C. Leonhardt, as they did from numerous other brokers. (Exhibits 5 and 6 of plaintiff.)

41. Defendants Albert J. Grayson and A. J. Grayson & Co., Inc. purchased at $1.00 per share, along with A. J. Grayson & Co. of New Jersey, Inc. and A. J. Grayson & Co. of Maryland, Inc., through the use of the mails, from the defendant McGrath Securities Corporation, a total of 207,000 shares of the common stock of the defendant Micro-Moisture Controls, Inc., registered in the name of Crawford & Co., securities nominee for defendant McGrath Securities Corporation, in the period from July 17, 1956 to October 10, 1956. These defendants admit that through the use of the mails they caused the transfer of these shares to numerous public investors residing in the United States, named in the following indicated letters of instructions to transfer agent, for the purpose of completing the prior public sales of 207,000 shares of said stock to the public investors, at an average price of $1⅛ per share, effected through the use of the mails, by agents and employees of said defendants:

| Crawford & Co. Certificate | Number of Shares | Date of Purchase from McGrath | Date of Letter of Instructions | Date of Transfer to Public |
|---|---|---|---|---|
| J 30790 | 5,000 | 7/17/56 | 7/17/56 | 7/19/56 |
| J 30795/96 | 10,000 | " | " | " |
| J 30791/93 | 15,000 | " | 7/18/56 | " |
| J 30798 | 5,000 | 7/20/56 (Md) | 7/20/56 | 7/26/56 |
| J 31500 | 5,000 | " " | 8/ 6/56 | 8/ 9/56 |
| J 31237 | 21,000 | 7/23/56 | 7/26/56 | 8/ 1/56 |
| J 31226 | 20,000 | 7/25/56 | 7/25/56 | 7/26/56 |
| J 31227 | 1,000 | " (NJ) | 7/26/56 | 7/30/56 |
| J 31239 | 10,000 | " " | 7/31/56 | 8/ 2/56 |
| J 31512 | 10,000 | 8/ 1/56 | 8/ 2/56 | 8/ 6/56 |
| J 31513 | 10,000 | " | 8/ 3/56 | 8/ 7/56 |
| J 32113 | 1,000 | 8/10/56 | 8/10/56 | 8/10/56 |
| J 32155/56 | 10,000 | " | " | 8/14/56 |
| J 32114/15 | 2,000 | " | 8/13/56 | " |
| J 32116/17 | 2,000 | " | 8/15/56 | 8/15/56 |
| J 32153/54 | 10,000 | " (NJ) | 8/10/56 | 8/14/56 |
| J 32118/42 | 25,000 | 8/14/56 " | 8/15/56 | 8/15/56 |
| J 32359; J 32361 | 20,000 | " (Md) | " | " |
| J 32360 | 10,000 | 8/15/56 | 8/15/56 | 8/15/56 |
| J 34322/24 | 3,000 | 10/ 5/56 (Md) | 10/ 5/56 | 10/19/56 |
| J 34325/31 | 7,000 | " " | 10/11/56 | " |
| J 34315/18 | 4,000 | 10/10/56 " | 10/17/56 | " |
| J 34334 | 1,000 | " | 10/11/56 | " |

207,000 shares

Note: "Md" refers to A. J. Grayson & Co., of Maryland;
"N.J." refers to A. J. Grayson & Co. of New Jersey.

(Exhibits 5, 6 and 7 of plaintiff.)

42. Defendants Albert J. Grayson and A. J. Grayson & Co., Inc., on November 8, 1956, purchased at $15/16 per share through the use of the mails from the defendant World Wide Investors Corporation 6,000 shares of the common stock represented by stock certificates J 36109/14 registered in the name of Crawford & Co. These defendants admit that through the use of the mails they caused the transfer of these shares to numerous public investors residing in the United States, named in a letter of instruction to transfer agent dated November 8, 1956, for the purpose of completing the prior public sales of 6,000 shares of said stock at an average price of $1⅛ per share, effected through the use of the mails by agents and employees of these defendants. (Exhibits 5, 6 and 7 of plaintiff.)

43. Defendants Albert J. Grayson and A. J. Grayson & Co., Inc., on November 19, 1956, purchased at $15/16 per share through the use of the mails from the defendant World Wide Investors Corporation, 4,550 shares of the common stock represented by stock certificate J 30268 registered in name of F. D. Hyman. These defendants admit that through the use of the mails they caused the transfer of these shares to numerous public investors residing in the United States named in a letter of instruction to transfer agent dated December 20, 1956 and January 7, 1957, for the purpose of completing the prior public sales of the 4,550 shares of stock at an average price of $1⅛ per share, effected through the use of the mails by agents and employees of these defendants. (Exhibits 5, 6 and 7 of plaintiff.)

44. Defendants Albert J. Grayson and A. J. Grayson & Co., Inc., on December 5, 1956, purchased at $1¹/₁₆ per share through the use of the mails from the defendant World Wide Investors Corporation 9,000 shares of the common stock represented by stock certificates J 37317/19 registered in the name of the defendant John Herschorn. These defendants admit that through the use of the mails they caused the transfer of these shares to numerous public investors residing in the United States named in letters of instruction to the transfer agent dated December 10 and 13, 1956, for the purpose of completing the prior public sales of the 9,000 shares of stock at an average price of $1⅛ per share effected through the use of the mails by agents and employees of these defendants. (Exhibits 5, 6 and 7 of plaintiff.)

45. Defendants Brown, Barton & Engel and George Phillip Barton admit that they regularly effect transactions in securities through the use of the mails in the City and State of New York. (Exhibit 8A of plaintiff.)

46. Defendants Brown, Barton & Engel and George Phillip Barton received a letter dated October 26, 1956, from P. L. Hyland, one of the stockholders of Converters Acceptance Corporation, offering for one month to this defendant corporation 20,000 shares of the common stock of defendant Micro-Moisture Controls, Inc. at 85 cents per share. (Exhibit 8C of plaintiff.) P. L. Hyland, in a further letter dated November 5, 1956 offered defendants Brown, Barton & Engel and George Phillip Barton for one month an additional 20,000 shares at 85 cents per share. (Exhibit 8B of plaintiff.) In another letter dated November 5, 1956, P. L. Hyland offered defendants for one month another 5,000 shares of the stock at 85 cents per share. (Exhibit D of defendants Brown, Barton & Engel and George Phillip Barton.)

47. The extracts set forth below reflect the entries made in the customers ledger for the year 1956, maintained by the defendants Brown, Barton & Engel and George Phillip Barton, recording the details of purchases through the mails by these defendants at 85 cents per share

of the total of 45,651 shares of the common stock of defendant Micro-Moisture Controls, Inc., owned of record by P. L. Hyland (Exhibit 8A of plaintiff):

| Date | Rec'd. | Description | Price | Charges | Credit |
|---|---|---|---|---|---|
| Nov. 1, | | 5,000 Micro-Moisture | .85 | | $4250.00 |
| 1 | | 10,000 " | .85 | | 8500.00 |
| 2 | 5000 | J36121/25 Rec'd | | | |
| 2 | | Check | | $4250.00 | |
| 16 | | 10,000 Micro-Moisture Cancelled | | 8500.00 | |
| | | 5,000 shares | | $4250.00 | $4250.00 |

———◆———

(a) Account of John Herschorn, 595 Westluke Avenue, Cote St. Luc, Montreal 29, Quebec.

(b) Account of P. L. Hyland, 595 Westluke Ave., Cote St. Luc, Montreal 29, Quebec.

| Date | Rec'd | Description | Price | Charges | Credit |
|---|---|---|---|---|---|
| Nov. 8 | | 15,000 Micro-Moisture | .85 | | $12,750.00 |
| 9 | 20000 | J30181 | Rec'd | | |
| 13 | | Check | | $12750.00 | |
| 16 | | 10,000 do. | .85 | | 8,500.00 |
| 19 | 20651 | J30182 | Rec'd | | |
| 19 | | 5,000 do. | .85 | | 4,250.00 |
| 20 | | Check | | 8500.00 | |
| 23 | | 5,000 do. | .85 | | 4,250.00 |
| 26 | | 5,000 do. | .85 | | 4,250.00 |
| 27 | | 651 do. | .85 | | 553.35 |
| 28 | | Check | | 13303.35 | |
| | | 40,651 shares | | $34553.35 | 34,553.35 |

48. The following recapitulation describes the essentials of the bank checks and endorsements thereon issued by the defendant Brown, Barton & Engel in payment for the total charges of $38,803.35 recorded in the preceding paragraph. (Exhibit 8A of plaintiff.)

| Date of Check | Number of Check | Amount of Check | Payee of Check | Endorsement Upon Check |
|---|---|---|---|---|
| 11/ 2/56 | 5189 | $ 4,250.00 | "John Herschorn Attorney" | "'John Herschorn Attorney" |
| 11/13/56 | 5228 | 12,750.00 | "P. L. Hyland" | "P. L. Hyland-John Herschorn-Atty." |
| 11/20/56 | 5266 | 8,500 | "P. L. Hyland" | "P. L. Hyland-John Herschorn-Atty." |
| 11/28/56 | 5293 | 13,303.35 | "P. L. Hyland" | "P. L. Hyland,-John Herschorn-Atty." |
| | | $38,803.35 | | |

49. Defendants Brown, Barton & Engel and George Phillip Barton caused the 45,651 shares of common stock represented by the following indicated stock certificates to be transferred through the use of the mails to numerous public investors residing in the United States named in the indicated letters of instruction of the defendant Brown, Barton & Engel to the transfer agent, for the purpose of completing the prior public sales of the 45,651 shares of stock at an average price of $1⅛ per share, effected through the use of the mails by agents and employees of defendants Brown, Barton & Engel and George Phillip Barton. (Exhibit 8A of plaintiff):

| Certificate Numbers | Number of Shares | Date Ltrs. of Instruction | Date Transfers to Public |
|---|---|---|---|
| J 36121/25 | 5,000 | 11/ 5/56 | 11/ 7/56 |
| J 30181 | 20,000 | 11/13/56 | 11/15/56 |
| J 30182 | 20,651 | 11/20, 27, 28, 29/56 12/ 3, 5, 5, 18/56 | 11/23/56 to 12/20/56 |

50. Defendant Brown, Barton & Engel, and George Phillip Barton received a letter dated November 10, 1956 from Irene Pichl, another of the stockholders of Converters Acceptance Corporation, offering this defendant corporation for one month 21,294 shares of the common stock of defendant Micro-Moisture Controls, Inc. at 85 cents per share. (Exhibit 8D of plaintiff.)

51. The following extracts reflect the entries made in the customers ledger for the year 1956 maintained by the defendants Brown, Barton & Engel and George Phillip Barton recording the details of the purchases through the mails by said defendants at 85 cents per share of the total of 21,294 shares of the common stock of defendant Micro-Moisture Controls, Inc., owned by Irene Pichl of record. (Exhibit 8A of plaintiff.):

Account of Irene Pichl, 568 7th Ave., Lachine, Quebec.

| Date | Rec'd | Description | Price | Charges | Credit |
|---|---|---|---|---|---|
| 11/27 | | 10,000 Micro-Moisture | .85 | | 8,500.00 |
| 11/29 | | 5,000 Micro-Moisture | .85 | | 4,250.00 |
| 12/4 | 21294 | J30188 | R | | |
| 12/4 | | Check | | $12,750.00 | |
| 12/5 | | 6294 Micro-Moisture | .85 | | 5,349.90 |
| 12/5 | | Check cancelled | | | 12,750.00 |
| 12/5 | | Check | | 12,750.00 | |
| 12/17 | | Check | | 5,349.90 | |
| | | 21,294 shares | | $18,099.90 | $18,099.90 |

———◆———

52. The following recapitulation describes the essentials of the bank checks and endorsements thereon issued by the defendant Brown, Barton & Engel in payment for the total charges of $18,099.90 recorded in the preceding paragraph as paid by checks to the account of Irene Pichl. (Exhibit 8A of plaintiff):

| Date of Check | Number of Check | Amount of Check | Payee of Check | Endorsement Upon Check |
|---|---|---|---|---|
| 12/ 5/56 | 5325 | $12,750.00 | "John Herschorn" "Attorney" | "John Herschorn Attorney" |
| 12/17/56 | 5368 | 5,349.90 | " " | " " |
| | | $18,099.90 | | |

———◆———

53. By use of the mails defendants Brown, Barton & Engel and George Phillip Barton caused the total of 21,294 shares of common stock of the defendant Micro-Moisture Controls, Inc., represented by stock certificate J 30188 registered in the name of Irene Pichl, to be reissued on December 4, 1956 in certificates series J 45987 to J 46048 inclusive and to be further transferred through the use of the mails to numerous public investors residing in the United States listed in the following indicated letters of instructions of defendant Brown, Barton & Engel to the transfer agent, for the purpose of completing the prior public sales of these

21,294 shares to the public investors, at an average price of $1⅛ per share, effect-ed through the use of the mails by agents and employees of these defendants:

| Certificate Numbers | Number of Shares Transferred to Public | Date of Letters of Instructions |
|---|---|---|
| J45987/46028 | 8,500 | 12/ 4/56 |
| J46029; J46041/48 | 1,770 | 12/ 6/56 |
| J46030 | 1,000 | 12/ 7/56 |
| J46031 | 1,000 | 12/10/56 |
| J46032/35 | 3,575 | 12/11/56 |
| J46036/37 | 2,000 | 12/13/56 |
| J46038/40 | 3,000 | 12/17/56 |
| J46753/55; J46202; J46751 | 349 | 12/18/56 |
| J46756 | 100 | 1/ 4/57 |
| | 21,294 shares | |

54. In addition to the defendant John Herschorn receiving payment as attorney for the 66,945 shares of common stock, John J. McKenna, Esq., former officer of the defendant McGrath Securities Corporation was the local representative of defendant John Herschorn. (Exhibits 8B, 8C, 8D of plaintiff and Exhibit D of defendants Brown, Barton & Engel and George Phillip Barton.)

55. Prior to any of the public sales of the total of 66,945 shares, defendant Brown, Barton & Engel obtained an oral legal opinion from John J. McKenna, Esq., former officer of defendant McGrath Securities Corporation, approving the transactions. Thereafter, confirmatory written opinions were furnished by McKenna. (Exhibits A and B of defendants Brown, Barton & Engel and George Phillip Barton.)

56. Defendant Rudolph V. Klein purchased through the use of the mails from the defendant McGrath Securities Corporation a total of 35,500 shares of the common stock of defendant Micro-Moisture Controls, Inc. Thereafter, these 35,500 shares represented by the stock certificates hereinafter indicated were transferred through the use of the mails to numerous public investors residing in the United States named in the indicated letters of instruction to the transfer agent, for the purpose of completing the prior public sales of 35,500 shares of the stock effected through the use of the mails by defendant Rudolph V. Klein.

| Certificate Numbers | Number of Shares | Date of Ltrs. of Instructions | Date of Transfers to Public |
|---|---|---|---|
| J31240 | 5,000 | 7/26/56 | 7/27/56 |
| J31501/03; J31509 | 3,500 | 8/ 1/56 | 8/ 2/56 |
| J31766 | 2,500 | 8/ 3/56 | 8/ 3/56 |
| J32108/12 | 5,000 | 8/10/56 | 8/10/56 |
| J32363 | 2,500 | 8/15/56 | 8/15/56 |
| J33007 | 2,500 | 8/29/56 | 8/30/56 |
| J33244 | 2,500 | 9/12/56 | 9/13/56 |
| J34332/33 | 2,000 | 10/10/56 | 10/11/56 |
| J35355/58 | 4,000 | 11/ 2/56 | 11/ 5/56 |
| J35359/64 | 6,000 | 11/ 7/56 | 11/ 8/56 |
| | 35,500 shares | | |

(Exhibits 9 and 10 of plaintiff.)

57. Defendant Rudolph V. Klein purchased a total of 17,500 shares of the common stock of defendant Micro-Moisture Controls, Inc., for a total cost of $15,574.10 which was paid to the defendant John Herschorn as attorney in six checks.

| Check Number | Amount of Check | Date of Check | No. of Shares | Certificates Purchased |
|---|---|---|---|---|
| A10843 | $7,119.60 | 11/28/56 | 8,000 | J37312, J37314, J37320 |
| A10883 | 5,339.65 | 12/ 4/56 | 6,000 | J37315, J37316 |
| A10923 | 1,334.90 | 12/12/56 | 1,500 | J46359, J46360 |
| A10924 | 445.00 | " | 500 | J46360 |
| A10957 | 445.00 | 12/18/56 | 500 | J46861 |
| A10952 | 889.95 | 12/27/56 | 1,000 | J46364 |
| | | | 17,500 | |

(Exhibit 11 of plaintiff.)

———◆———

58. Eight thousand shares of the 17,500 shares, represented by certificates J 37312, J 37314 and J 37320, were transferred through the use of the mails to numerous public investors residing in the United States listed in a letter of instructions of defendant Rudolph V. Klein to transfer agent dated November 28, 1956, for the purpose of completing the prior public sales of 8,000 shares of the stock at an average price of $1⅛ per share, effected through the use of the mails by agents and employees of defendant Rudolph V. Klein. (Exhibits 9, 10 and 11 of plaintiff.)

59. Six thousand shares of the 17,500 shares, represented by certificates J 37315 and J 37316, were transferred through the use of the mails to numerous public investors residing in the United States listed in a letter of instruction of defendant Rudolph V. Klein to transfer agent dated December 4, 1956, for the purpose of completing the prior public sales of 6,000 shares of the stock at an average price of $1⅛ per share, effected through the use of the mails by agents and employees of defendant Rudolph V. Klein. (Exhibits 9, 10 and 11 of plaintiff.)

60. Two thousand shares of the 17,500 shares, represented by certificates J 46359 and J 46360 were transferred through the use of the mails to numerous public investors residing in the United States listed in a letter of instruction of defendant Rudolph V. Klein to transfer agent dated December 13, 1956, for the purpose of completing the prior public sales of 2,000 shares of said stock at an average price of $1⅛ per share, effected through the use of the mails by agents and employees of defendant Rudolph V. Klein. (Exhibits 9, 10 and 11 of plaintiff.)

61. One thousand shares of the 17,500 shares, represented by certificate J46364, were transferred through the use of the mails to public investors residing in the United States listed in a letter of instruction of defendant Rudolph V. Klein to transfer agent dated December 17, 1956, for the purpose of completing the prior public sales of 1,000 shares of said stock at an average price of $1⅛ per share, effected through the use of the mails by agents and employees of defendant Rudolph V. Klein. (Exhibits 9, 10 and 11 of plaintiff.)

62. The remaining 500 of the 17,500 shares, represented by certificate J46861 were transferred through the use of the mails to public investors residing in the United States listed in a letter of instructions of defendant Rudolph V. Klein to transfer agent dated December 18, 1956,

732

for the purpose of completing the prior public sales of 500 shares of stock at an average price of $1⅛ per share, effected through the use of the mails by agents and employees of defendant Rudolph V. Klein. (Exhibits 9, 10 and 11 of plaintiff.)

63. Defendant Rudolph V. Klein met the defendant Louis Levin in June 1956 and thereafter saw him four or five times during the summer of that year "and whenever I met him, he would explain the progress of the company and how well they were doing * * *" (Tr P 156.)

64. Towards the end of October 1956 the defendant Robert C. Leonhardt told defendant Rudolph V. Klein that "it would be impossible for him to deliver or sell any more Micro-Moisture stock to him but he recommended that he would have Mr. Levin, the president of the company get in touch with him and Mr. Levin would work something out if I want to buy stock at that time, at or around the bid price, Mr. Levin would work out the details." (Tr P 154.) Thereafter he met the defendant Louis Levin and in several transactions arranged to purchase the 17,500 shares.

65. Defendant Rudolph V. Klein's checks totalling $15,574.10 in payment for the 17,500 shares were made out to the order of the defendant John Herschorn "at the advice and instructions of Mr. Levin" (Tr P 163.). Moreover, the defendant Rudolph V. Klein, at the instruction of defendant Louis Levin, delivered the checks to John J. McKenna, former officer of the defendant McGrath Securities Corporation and received delivery from the latter of the 17,500 shares. Furthermore, John J. McKenna advised the defendant Rudolph V. Klein on the legality of the public sales of the 17,500 shares.

66. Defendant Rudolph V. Klein admits that the defendant Louis Levin set the sales price of $15,574.10 for the 17,500 shares.

67. Defendant Rudolph V. Klein admits that the defendant Louis Levin advised him that the 17,500 shares of stock "were free trading shares". (Tr P 213.)

68. Defendant Rudolph V. Klein knew that the defendant John Herschorn held powers of attorney at the time he made the several purchases of the total of 17,500 shares.

69. Defendants I. W. Page & Co., Inc. and Jack Gold after becoming effectively registered with the plaintiff as a broker-dealer in securities, commenced business on or about October 1, 1956 at 37 Wall Street, New York City, New York. At about that time these defendants opened securities accounts for the defendant John Herschorn as attorney; P. L. Hyland a stockholder of Converters Acceptance Corporation; and Benjamin Plotnick of 5 Bridge Street, Montreal, Canada, the principal executive officer of Plotnick Brothers, Ltd., of the same address, a wholly owned subsidiary of defendant Micro-Moisture Controls, Inc., since on or about December 20, 1956. During the months that followed substantial sales of securities were effected through these accounts. Moreover, defendant Jack Gold on or about October 5, 1956, purchased at $1.05 from Benjamin Plotnick 20,000 shares of common stock of defendant Micro-Moisture Controls, Inc., which are not an issue in this action, and gave Plotnick a personal four month promissory note in the amount of $21,000 in payment for the shares. (Exhibit 12B of plaintiff.)

70. Defendants I. W. Page & Co., Inc. and Jack Gold purchased at 75 cents per share, through the use of the mails, from the defendant John Herschorn as attorney for Phillip Goodkin, another of the stockholders of Converters Acceptance Corporation, 54,964 shares of the common stock of defendant Micro-Moisture Controls, Inc. pursuant to the terms of a letter option dated October 26, 1956. (Exhibit A of defendants I. W. Page & Co., Inc. and Jack Gold.) These 54,964 shares were delivered to defendants I. W. Page & Co., Inc. and Jack Gold on November 13, 1956. Thereupon, these 54,964 shares represented by stock certificates J 30189/91 in the name of said

Goodkin were transferred through the use of the mails to numerous public investors residing in the United States named in a letter of instruction to the transfer agent dated November 20, 1956, for the purpose of completing the prior public sales of 54,964 shares of the stock at an average price of $1⅛ per share effected through the use of the mails by agents and employees of defendants I. W. Page & Co., Inc. and Jack Gold. (Exhibits 1E, 12B of plaintiff.)

71. Defendants I. W. Page & Co., Inc. and Jack Gold purchased at 75 cents per share through the use of the mails from the defendant John Herschorn as attorney for Anita Schactman, one of the stockholders of Converters Acceptance Corporation, 40,000 shares of the common stock of defendant Micro-Moisture Controls, Inc. pursuant to the terms of a letter option dated November 5, 1956. (Exhibit B of defendants I. W. Page & Co., Inc. and Jack Gold.) These 40,000 shares were delivered to defendant I. W. Page & Co., Inc. and Jack Gold on November 9, 1956. Thereupon, these 40,000 shares represented by stock certificates J 30183/84 in name of Schactman were transferred through the use of the mails to numerous public investors residing in the United States named in a letter of instruction to the transfer agent dated November 20, 1956, for the purpose of completing the prior public sales of 40,000 shares of the stock at an average price of $1⅛ per share effected through the use of the mails by agents and employees of defendants I. W. Page & Co., Inc. and Jack Gold. (Exhibits 1E, 12B of plaintiff.)

72. Defendants I. W. Page & Co., Inc. and Jack Gold purchased at 90 cents per share through the use of the mails, from the defendant John Herschorn as attorney for Anita Schactman, 20,652 shares of the common stock of defendant Micro-Moisture Controls, Inc. pursuant to the terms of a letter option dated November 9, 1956. (Exhibit C of defendants I. W. Page & Co., Inc. and Jack Gold.) These 20,652 shares were delivered to defendants I. W. Page & Co., Inc. and Jack Gold

on November 21, 1956. Thereupon, these 20,652 shares represented by stock certificate J 30185 in name of Schactman were transferred through the use of the mails to numerous public investors residing in the United States named in a letter of instruction to the transfer agent dated December 4, 1956, for the purpose of completing the prior public sales of 20,652 shares of the stock at an average price of $1⅛ per share effected through the use of the mails by agents and employees of defendants I. W. Page & Co., Inc. and Jack Gold. (Exhibits 1E, 12B of plaintiff.)

73. Defendants I. W. Page & Co., Inc. and Jack Gold purchased at 85 cents per share through the use of the mails from the defendant John Herschorn as attorney for H. Levine, another of the stockholders of Converters Acceptance Corporation, 34,398 shares of the common stock of defendant Micro-Moisture Controls, Inc., pursuant to the terms of a letter option. These 34,398 shares were delivered to defendants I. W. Page & Co., Inc., and Jack Gold on December 11, 1956. Thereupon these 34,398 shares represented by stock certificates J 30269/70 in name of Levine were transferred through the use of the mails to numerous public investors residing in the United States named in a letter of instruction to the transfer agent dated December 14, 1956, for the purpose of completing the prior public sales of 34,398 shares of said stock at an average price of $1⅛ per share effected through the use of the mails by agents and employees of defendants I. W. Page & Co., Inc. and Jack Gold. (Exhibits 1E, 12B of plaintiff.)

74. It is a fact that Exhibits A, B and C of the defendants I. W. Page & Co., Inc. and Jack Gold patently indicate that John J. McKenna, Esq., former officer of defendant McGrath Securities Corporation, acted as local attorney for the defendant John Herschorn in effecting these transactions.

75. Defendant World Wide Investors Corporation admits that in the latter part of the year 1956 it regularly effected securities transactions through the use

of the mails in the City and State of New York. (Exhibit 13 of plaintiff.)

76. Defendant World Wide Investors Corporation admits that it was aware that during the period in issue the relative positions of stockholders were as described in Finding of Fact 14. (Exhibits 1B and 13 of plaintiff.)

77. Defendant World Wide Investors Corporation admits that it was aware during the period hereinafter indicated that defendant John Herschorn was a substantial stockholder of the defendant Micro-Moisture Controls, Inc. (Exhibits 1B and 13 of plaintiff.)

78. Defendant World Wide Securities Corporation, on August 10, 1956, purchased at about $1.00 per share through the use of the mails from the defendant McGrath Securities Corporation 500 shares of the common stock represented by stock certificate J 32148 registered in the name of Crawford & Co., securities nominee for defendant McGrath Securities Corporation. This defendant admits that through the use of the mails it caused the transfer of these shares to public investors residing in the United States named in a letter of instruction to transfer agent dated August 17, 1956, for the purpose of completing the prior public sales of 500 shares of the stock at an average price of $1⅛ per share effected through the use of the mails by agents and employees of defendant World Wide Investors Corporation. (Exhibit 13 of plaintiff.)

79. Defendant World Wide Securities Corporation, on October 24, 1956, purchased at about $1.00 per share through the use of the mails from the defendant McGrath Securities Corporation 8,000 shares of the common stock represented by stock certificates J 35347/54 registered in name of the foregoing Crawford & Co. This defendant admits that through the use of the mails it caused the transfer of these shares to numerous public investors residing in the United States named in a letter of instruction dated November 1, 1956, for the purpose of completing the prior public sales of 8,000 shares of the stock at an average price of $1⅛ per share effected through the use of the mails by agents and employees of the defendant World Wide Investors Corporation. (Exhibit 13 of plaintiff.)

80. Defendant World Wide Securities Corporation, on November 1, 1956, purchased at 90 cents per share through the use of the mails from the defendant John Herschorn 10,000 shares of the common stock represented by certificates J 36109/18 registered in the name of Crawford & Co. Of this total of 10,000 shares, 6,000 shares represented by certificates J 36109/14 were sold at $15/16 per share through the use of the mails for public distribution to the defendant, A. J. Grayson & Co., Inc. on November 8, 1956. An additional 1,000 of these shares were sold on November 1, 1956 at 90 cents per share through the mails for public distribution to a registered broker-dealer in securities maintaining a place of business in New York City, New York. The remaining 3,000 shares were by use of the mails transferred to numerous public investors residing in the United States in a letter of instruction to the transfer agent dated November 13, 1956, for the purpose of completing the prior public sales of 3,000 shares of the stock at an average price of $1⅛ per share, effected through the use of the mails by agents and employees of the defendant World Wide Investors Corporation. (Exhibit 13 of plaintiff.)

81. Defendant World Wide Investors Corporation, on November 16, 1956, purchased at 90 cents per share through the use of the mails from the defendant John Herschorn 4,550 shares of the common stock represented by stock certificate J 30268 registered in the name of F. D. Hyman. These 4,550 shares were sold at $15/16 per share through the use of the mails for public distribution to the defendant, A. J. Grayson & Co., Inc. on November 19, 1956. (Exhibit 13 of plaintiff.)

82. Defendant World Wide Investors Corporation, on December 10, 1956, pur-

chased at 90 cents per share through the use of the mails from the defendant John Herschorn 9,000 shares of the common stock represented by stock certificates J 37317/19 registered in the name of defendant John Herschorn. These 9,000 shares were delivered by defendant World Wide Investors Corporation on the day of purchase to defendant A. J. Grayson & Co., Inc., for the purpose of completing a prior sale through the use of the mails for public distribution at $1⅟₁₆ per share on December 5, 1956. (Exhibit 13 of plaintiff.)

83. Defendants Rockwell Securities Corporation and Garland L. Culpepper, Jr., admit that defendant Garland L. Culpepper, Jr., while president of defendant Micro-Moisture Controls, Inc., during the period from 1954 to April 1956, knew that the defendant Robert C. Leonhardt, as president of McGrath Securities Corporation, along with several other brokers and dealers, had made periodic inquiries regarding the affairs of Micro-Moisture Controls, Inc. On the extent of the participation of defendants Robert C. Leonhardt and McGrath Securities Corporation in the over-the-counter market for the securities of defendant Micro-Moisture Controls, Inc., these defendants knew that defendant McGrath Securities Corporation, along with several other brokers and dealers, traded and quoted such stock and that quotations by McGrath Securities Corporation, together with other brokers and dealers, appeared in National Quotation Service daily sheets. (Exhibit 15 of plaintiff.)

84. While defendant Garland L. Culpepper Jr. was the president of defendant Micro-Moisture Controls, Inc., the defendant Louis Levin in late 1954 or early 1955 became identified with the corporation in an executive capacity and later succeeded defendant Garland L. Culpepper Jr. as president of the corporation. During this period contacts between the defendants Garland L. Culpepper, Jr. and Louis Levin were routine and mostly by telephone. After resigning as president of defendant Micro-Moisture Controls, Inc., the defendant, Garland L. Culpep-

per Jr. as president of defendant Rockwell Securities Corporation, had limited communications with defendant Louis Levin, confined to inquiries and reports on the affairs of defendant Micro-Moisture Controls, Inc., which defendant Louis Levin saw fit to make available to brokers and dealers trading in the stock of Micro-Moisture Controls, Inc., including defendant Rockwell Securities Corporation. (Exhibit 15 of plaintiff.)

85. Defendants Rockwell Securities Corporation and Garland L. Culpepper, Jr., met the defendant John Herschorn for the first time in September 1956, in New York City, when John Herschorn offered certain stock for sale to Rockwell Securities Corporation and John Herschorn represented himself to be a Canadian attorney. (Exhibit 15 of plaintiff.)

86. The defendant John Herschorn, on or about September 18, 1956, delivered to the defendant Rockwell Securities Corporation stock certificate J 30120 representing 20,000 shares of the common stock of defendant Micro-Moisture Controls, Inc. registered in the name of said defendant John Herschorn. Defendant, Rockwell Securities Corporation purchased 5,000 of these shares at 90 cents per share at or about that time. Defendant, Rockwell Securities Corporation, through a letter of instruction to the transfer agent, caused the certificate J 30120 for 20,000 shares to be cancelled, and 15,000 of these shares to be re-issued in certificates J 34363/65 registered in the name of defendant John Herschorn and returned to him. All of the 5,000 shares purchased by Rockwell Securities Corporation from defendant John Herschorn were sold by Rockwell Securities Corporation for its firm account on or before September 20, 1956, at an average price of $1⅛ per share. These shares were transferred into the names of such purchasers and these sales were completed and executed through the use of the mails by agents and employees of the defendant Rockwell Securities Corporation. (Exhibit 15 of plaintiff.)

87. On or about September 18, 1956, defendant Robert C. Leonhardt delivered

or caused to be delivered to the defendant Garland L. Culpepper Jr. stock certificate J 32932 of defendant Micro-Moisture Controls, Inc., which represented 45,000 shares of the common stock of that defendant company, registered in the name of Leigh & Company, to repay a loan of 45,000 shares of the stock made by the defendant Garland L. Culpepper Jr. to the defendant Robert C. Leonhardt, on or about June 28, 1956. Thereafter, the defendant Rockwell Securities Corporation, through a letter of instruction dated September 18, 1956, (Exhibit A of defendants Rockwell Securities Corporation and Garland L. Culpepper, Jr.,) caused the transfer agent to cancel certificate J 32932 and re-issue 1,400 of these shares directly to purchasers in certificates J 33422/25 and the balance, 43,600 shares, certificates J 33426 to J 33501, in the name of Leigh & Company.

88. The defendant Rockwell Securities Corporation, caused this total of 45,000 shares of the common stock to be sold to purchasers at an average price of $1⅛ per share. These shares were transferred in to the names of purchasers and the sales were completed and executed through the use of the mails by agents and employees of the defendant Rockwell Securities Corporation. (Exhibit 15 of plaintiff.)

89. The defendant Rockwell Securities Corporation and Garland L. Culpepper Jr. produced copies of seven of the letters of instruction of defendant Rockwell Securities Corporation to the transfer agent causing the transfers of the 43,600 shares to public investors. Each of these letters indicates the certificates surrendered of the series J 33426 to J 33501 and the names of the public purchasers. (Exhibits 16A to 16G, inclusive, of plaintiff.)

The last of these letters, dated December 6, 1956, forwarded for transfer to public customers certificates J 33450 and J 33465, each for 1000 shares, along with several other certificates. (Exhibit 16G of plaintiff.) The customers ledger pages of the defendant Rockwell Securities Corporation (Exhibits 19A and 19B of plaintiff) disclose that the sales of the securities listed in the letter of December 6, 1956, were effected in the month preceding the letter of instructions.

Findings of Fact on the Affirmative Defense Pleaded by Several of the Defendants

90. On December 20, 1955, defendant Micro-Moisture Controls, Inc. issued and delivered to the Peeby Company, Inc., a Canadian Corporation, 1,200,000 shares of its common stock for all of the assets of the latter company. Thereupon, Peeby Company, Inc. distributed these 1,200,000 shares pro rata to its 20 stockholders. Defendant Micro-Moisture Controls, Inc. claimed that the transaction was effected, without the filing of a registration statement, in reliance upon the provisions of Rule 230.133 of General Rules and Regulations under the Securities Act of 1933 (230.133 RCP). Immediately, after the issuance of the 1,200,000 shares there were outstanding 2,947,355 shares of said common stock.

91. The 20 stockholders granted the defendant Louis Levin powers of attorney to sell their shares of the total of 1,200,000 shares of the common stock of defendant Micro-Moisture Controls, Inc.

92. At about the time of this transaction the defendants Louis Levin, Robert C. Leonhardt, and Albert J. Grayson each borrowed $100,000 from a bank located in the State of New York. Furthermore, the defendant Louis Levin, through the powers of attorney, pledged 600,000 shares of the 1,200,000 shares of the common stock as collateral security for the loans.

93. It is the position of the defendant parties concerned that the $300,000 obtained through the loans was turned over to the defendant Louis Levin.

94. The defendant Louis Levin, under the authorizations conferred by the powers of attorney, sold the 1,200,000 shares of common stock through broker-dealers in New York, including the defendant McGrath Securities Corporation.

95. The sales of these 1,200,000 shares of common stock were completed on or about the end of May 1956.

96. A Securities Investigator in the performance of his official duties, as an employee of the plaintiff, visited the principal office of the defendants McGrath Securities Corporation and Robert C. Leonhardt for the purpose of making a routine inspection of the books and records of said defendant registrant "in the early spring of 1956" (Tr P 20); "perhaps between March and April" (Tr P 50). The Securities Investigator, after spending several hours examining the books, asked John J. McKenna, Esq., in his capacity as vice-president and house counsel of defendant McGrath Securities Corporation, about the defendant Louis Levin, because that defendant's name appeared on the records of the corporation as the seller of a substantial number of shares of the common stock of defendant Micro-Moisture Controls, Inc. At the time of this inspection and conversation more than half of the 1,200,000 shares had been sold. "There might have been 400,000 shares left." (Tr P 24.) The Securities Investigator also asked John J. McKenna, Esq. what exemption from the registration requirements of the Securities Act of 1933 had been relied upon by defendant registrant in effecting the sales of unregistered shares. In reply John J. McKenna, Esq. stated that these sales had been effected by persons not in a control relationship to defendant Micro-Moisture Controls, Inc. Therefore, the transactions were exempt from registration under Section 4(1) of the Securities Act of 1933, (15 U.S.C. § 77d (1)) 15 U.S.C.A. § 77d(1). In this connection John J. McKenna, Esq. described the Peeby Company, Inc. transaction and produced for inspection the powers of attorney granted defendant Louis Levin and two letter opinions dated December 20, 1955 of attorney E. Blummer. (Tr P 23 ff and Exhibits C, D and E of defendants McGrath Securities Corporation and Robert C. Leonhardt.)

97. During this conference the Securities Investigator and John J. McKenna, Esq. generally discussed the facts of the bank loans for which the indicated 600,000 shares were pledged as collateral, while the powers of attorney were inspected. In the course of the interview the Securities Investigator requested and received a copy of the standard form of the aforesaid powers of attorney.

98. Several days after the inspection and interview, the Securities Investigator requested John J. McKenna, Esq. to discuss the powers of attorney with a Chief Investigator at the New York office of the plaintiff. In the words of the said John J. McKenna, Esq. (Tr P 29):

"The purpose—the main purpose —the purpose of the meeting was to discuss the powers of attorney which employees of the SEC believed were not adequate for Mr. Levin to hypothecate the shares involved."

After a discussion at some length it was suggested the matter be discussed further with a chief attorney on the staff. In the third conference that followed, John J. McKenna, Esq. recollects that he was informed that the powers of attorney appeared inadequate for the purposes of hypothecation and that the language in the powers should be made more specific. As a result of this latter conference John J. McKenna, Esq. caused the powers of attorney to be revised and "we gave a photostatic copy of the revised power of attorney to the SEC". (Tr P 29 ff.)

99. The Peeby Company, Inc. transaction and subsequent public distribution by registered dealers of the 1,200,000 shares of common stock, in the main followed the same pattern as the later Converter Acceptance Corporation liquidation which is the basis of the complaint.

100. The local Regional Administrator for the plaintiff, in a confidential staff memorandum dated April 20, 1956, directed an investigation be made of the Peeby Company, Inc. transaction of the defendant Micro-Moisture Controls, Inc. (Tr P 316 ff; Exhibit 20 of plaintiff.)

101. Some time prior to July 17, 1956, the defendants Albert J. Grayson and A.

J. Grayson & Co., Inc. learned of the investigation, for these defendants were requested by a representative of the plaintiff to submit the details of transactions effected in the common stock of defendant Micro-Moisture Controls, Inc. during the period from January 1, 1956, to May 31, 1956. (Tr P 346; Exhibit 25 of plaintiff.)

102. Some time prior to August 17, 1956, John J. McKenna, Esq., then vice-president and house counsel of defendant McGrath Securities Corporation, obtained for consideration, in connection with the investigation, the basic documents relating to the Peeby Company, Inc. transaction of defendant Micro-Moisture Controls, Inc. (Tr P 340; Exhibit 24 of plaintiff.)

103. The first references to the Converters Acceptance Corporation transaction of June 21, 1956 was during a recorded examination of defendant Robert C. Leonhardt, with his attorney, John J. McKenna, Esq. on October 22 and 25, 1956, conducted by a representative of the plaintiff as part of the investigation of the Peeby Company, Inc. transaction.

104. The record of the examinations of October 22 and 25, 1956, does not contain any reference to a list of individuals purportedly in a control relationship to the defendant Micro-Moisture Controls, Inc. The record of the examinations discloses that the representative of the plaintiff conducting these examinations advised the defendants Robert C. Leonhardt and John J. McKenna, Esq., on the question of control relationship, that an opinion about it would have to be obtained from the Interpretative Division of the local Regional Office of the plaintiff. Moreover, no other advice on this question was given off the record by the representative to the defendant Robert C. Leonhardt and his attorney.

105. The local Regional Administrator for the plaintiff, in a confidential staff memorandum dated November 8, 1956, initiated the investigation of the Converters Acceptance Corporation transaction of the defendant Micro-Moisture Controls, Inc., which is the basis of this action.

106. On the particular findings relating to the affirmative defense pleaded either formally or by way of record stipulation by the defendants concerned, the attorneys for the plaintiff objected to the introduction of any evidence in support of the defense on the grounds that it was not good in law, was immaterial and irrelevant, contained improper matter and involved other grounds for objection. Moreover, the attorneys for the plaintiff noted an exception to the general interlocutory ruling of the Court allowing the introduction of the evidence.

Conclusions of Law

1. Defendants John Herschorn, Gershon Kaplan and at least 25 of the remaining 29 stockholders of the Converters Acceptance Corporation constituted a group, that under the direction of defendant John Herschorn, through the record ownership of more than forty-three per cent (43%) of the common stock of defendant Micro-Moisture Controls, Inc., in common control with or under the control of defendant Louis Levin, dominated and controlled that defendant Corporation after June 21, 1956. Therefore, each of the individuals acted as *issuers*, as that term is defined in Section 2(11) of the Securities Act of 1933 as amended, 15 U.S.C. § 77b(11), 15 U.S.C.A. § 77b(11), in effecting the public sales of a total of at least 710,623 shares of the common stock of defendant Micro-Moisture Controls, Inc. to the indicated defendants.

2. Defendants McGrath Securities Corporation and Robert C. Leonhardt acted as *underwriters*, as that term is defined in Section 2(11) of the Securities Act, in the purchase and public sales through the use of the mails of a total of 447,614 shares of the common stock of defendant Micro-Moisture Controls, Inc.

3. Defendants McGrath Securities Corporation and Robert C. Leonhardt knew or in the exercise of reasonable care should have known that they acted as underwriters in effecting through the

use of the mails the public sales of a total of 447,614 shares of that common stock.

4. The *ex parte* restraining order of January 10, 1957, extensions thereof, and the preliminary injunction entered on March 6, 1957, against defendants Mc-Grath Securities Corporation and Robert C. Leonhardt were necessary in the public interest.

5. Defendants Albert J. Grayson and A. J. Grayson & Co., Inc., along with the wholly owned companies of defendant Albert J. Grayson, acted as *underwriters*, as that term is defined in Section 2(11) of the Securities Act, in the purchase and public sales through the use of the mails of a total of 226,550 shares of the common stock of defendant Micro-Moisture Controls, Inc.

6. Defendants Albert J. Grayson and A. J. Grayson & Co., Inc. knew or in the exercise of reasonable care should have known that they acted as underwriters in effecting through the use of the mails the public sales of a total of 226,550 shares of that common stock.

7. The *ex parte* restraining order of January 10, 1957, extensions thereof, and the preliminary injunction entered March 6, 1957, against defendants Albert J. Grayson and A. J. Grayson & Co., Inc. were necessary in the public interest.

8. Defendants Brown, Barton & Engel, and George Phillip Barton acted as *underwriters*, as that term is defined in Section 2(11) of the Securities Act, in the purchase and public sales of a total of 66,945 shares of the common stock of defendant Micro-Moisture Controls, Inc.

9. Defendants Brown, Barton & Engel, and George Phillip Barton knew or in the exercise of reasonable care should have known that they acted as underwriters in effecting through the use of the mails the public sales of a total of 66,945 shares of that common stock.

10. The *ex parte* restraining order of January 10, 1957, extensions thereof, and the preliminary injunction entered on March 6, 1957, against defendants Brown, Barton & Engel, and George Phillip Barton were necessary in the public interest.

11. Defendant Rudolph V. Klein, doing business as R. V. Klein Company, acted as *underwriter*, as that term is defined in Section 2(11) of the Securities Act, in the purchase and public sales through the use of the mails of a total of 53,000 shares of the common stock of defendants Micro-Moisture Controls, Inc.

12. Defendant Rudolph V. Klein knew or in the exercise of reasonable care should have known that he acted as an underwriter in effecting through the use of the mails the public sales of a total of 53,000 shares of that common stock.

13. The *ex parte* restraining order of January 10, 1957, extensions thereof, and the preliminary injunction entered March 6, 1957, against defendant Rudolph V. Klein, doing business as R. V. Klein Company were necessary in the public interest.

14. Defendants I. W. Page & Co., Inc. and Jack Gold acted as *underwriters*, as that term is defined in Section 2(11) of the Securities Act, in the purchase and public sales through the use of the mails of a total of 150,014 shares of the common stock of defendant Micro-Moisture Controls, Inc.

15. Defendants I. W. Page & Co., Inc. and Jack Gold knew or in the exercise of reasonable care should have known that they acted as underwriters in effecting through the use of the mails the public sales of 150,014 shares of that common stock.

16. The *ex parte* restraining order of January 10, 1957, extensions thereof, and the preliminary injunction entered March 6, 1957, against defendants I. W. Page & Co., Inc. and Jack Gold were necessary in the public interest.

17. Defendant World Wide Investors Corporation acted as *underwriter*, as that term is defined in Section 2(11) of the Securities Act, in the purchase and public sales through the use of the mails of a total of 32,050 shares of the common stock of defendant Micro-Moisture Controls, Inc.

18. Defendant World Wide Investors Corporation knew or in the exercise of reasonable care should have known that they acted as an underwriter in effecting through the use of the mails the public sales of a total of 32,050 shares of that common stock.

19. The *ex parte* restraining order of January 10, 1957, extensions thereof, and the preliminary injunction entered March 6, 1957, against defendant World Wide Investors Corporation were necessary in the public interest.

20. Defendants Rockwell Securities Corporation and Garland L. Culpepper Jr. acted as *underwriters,* as that term is defined in Section 2(11) of the Securities Act, in the purchase and acquisition for value, and public sales, of a total of 50,000 shares of the common stock of defendant Micro-Moisture Controls, Inc.

21. Defendants Rockwell Securities Corporation and Garland L. Culpepper Jr. knew or in the exercise of reasonable care should have known that they acted as underwriters in effecting through the use of the mails the public sales of a total of 50,000 shares of that common stock.

22. The *ex parte* restraining order of January 10, 1957, extensions thereof, and the preliminary injunction entered March 6, 1957, against defendants Rockwell Securities Corporation and Garland L. Culpepper Jr. were necessary in the public interest.

23. Defendant Micro-Moisture Controls, Inc., through its officers, made possible the public sales of the total of at least 710,623 unregistered shares of the common stock of that defendant corporation by the indicated defendants acting as underwriters, by arranging with knowledge for required transfers after public sales of these shares through the use of the mails to the numerous public purchasers, within the purview of Section 5(a)(2) of the Securities Act, 15 U.S.C. § 77e(a) 2, 15 U.S.C.A. § 77e(a)(2).

24. Defendant Louis Levin, while president of defendant Micro-Moisture Controls, Inc. materially participated in the public distribution and generally during 1956 maintained close contact with several of the defendants that as underwriters effected the substantial part of the total public sales of at least 710,623 shares of the common stock.

25. Because the Securities Act provides no exemption for the public sales through the use of the mails of the total of at least 710,623 unregistered shares of the common stock of defendant Micro-Moisture Controls, Inc., which were purchased from the indicated issuers by the defendants McGrath Securities Corporation and Robert C. Leonhardt; Albert J. Grayson and A. J. Grayson & Co., Inc., along with the wholly owned companies of the defendant Albert J. Grayson; Brown, Barton & Engel, Incorporated, and George Phillip Barton; Rudolph V. Klein, doing business as R. V. Klein Company; I. W. Page & Co., Inc. and Jack Gold; World Wide Investors Corporation; and Rockwell Securities Corporation and Garland L. Culpepper Jr., acting as underwriters, each of these defendant purchasers violated in each of the transactions enumerated herein Section 5(a)(1) and (2) of the Securities Act, 15 U.S.C. § 77e(a) 1 and 2, 15 U.S.C.A. § 77e(a)(1, 2), by selling the total of at least 710,623 shares through the use of the mails to numerous public investors. Moreover, the defendants Micro-Moisture Controls, Inc., Louis Levin, and John Herschorn aided, abetted and participated in the violations. Therefore, it is in the public interest that a permanent injunction be entered.

26. On the affirmative defense, based upon following the pattern of the previous Peeby Company, Inc. transaction, neither the plaintiff nor its staff directly or indirectly caused the defendants concerned to understand or assume that the public sales of the number of shares and in the manner involved was not an offense in violation of Section 5(a)(1) and (2) of the Securities Act, 15 U.S.C. 77e(a) 1 and 2, 15 U.S.C.A. § 77e(a)(1, 2). The doctrine of estoppel may not be invoked against the plaintiff, S. E.

C. v. Morgan, Lewis & Bokius, 3 Cir., 209 F.2d 44; see United States v. City and County of San Francisco, 310 U.S. 16, 60 S.Ct. 749, 84 L.Ed. 1050; nor did any conduct by the plaintiff or its staff constitute an interpretation of rules on which defendants reasonably relied, see Klein v. S. E. C., 2 Cir., 224 F.2d 861, 864.